## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

LEWIS MOORE, III,                                 )
                                                  )
                    Plaintiff,                    )
v.                                                )          **Civil Action No. 1:20-00575**
                                                  )
B. RIFE, *et al.*,                                )
                                                  )
                    Defendants.                   )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 37), filed on August 24, 2022. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 41.) Plaintiff filed his Responses in Opposition on November 2, 2022. (Document No. 44.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 37) should be granted.

### FACTUAL AND PROCEDURAL HISTORY

On August 31, 2020, Plaintiff, acting *pro se*,[1] filed his Motion to Proceed Without Prepayment of Fees and Costs and a Complaint for alleged violations of his constitutional and civil

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) B. Rife, Food Services Supervisor; (2) W. Hacker, Head of Safety; (3) B. Rickard, former Warden; and (4) FCI McDowell. (Document No. 2.) Plaintiff alleges that on March 11, 2018, "at or around 6:10 p.m. in Food Services at FCI McDowell, Officer B. Rife neglectfully locked me in a cooler for more than an hour and a half withstanding a temperature near freezing." (<u>Id.</u>, pp. 5 – 7.) Plaintiff states that Officer Rife "did this on purpose as a cruel joke and it is captured on film." (<u>Id.</u>) Plaintiff explains that he was "able to break down the door by running into it with [his] shoulder." (<u>Id.</u>) Plaintiff, however, complains that he injured his "shoulder and neck in the process of knocking the door down." (<u>Id.</u>) Although Plaintiff states that "most of the blame is on B. Rife," Plaintiff claims that Officer W. Hacker failed to ensure the emergency exit in the cooler was functioning properly. (<u>Id.</u>) Plaintiff states that there is an "emergency exit" in every cooler or freezer. (<u>Id.</u>) Plaintiff, however, complains that the "emergency exit" in the cooler at FCI McDowell was "broken." (<u>Id.</u>) Plaintiff alleges that Officer Hacker was the "head of safety at the time" and "it is his job to make sure all of the emergency exits are functional." (<u>Id.</u>) Plaintiff acknowledges that all "emergency exits" were replaced within a week of the above incident. (<u>Id.</u>) As to Warden B. Rickard, Plaintiff alleges that she "was the Warden at the time and was responsible for the overall functioning of the prison." (<u>Id.</u>) Finally, Plaintiff alleges that Officer Rife retaliated against him for filing administrative remedies involving the above incident. (<u>Id.</u>) Specifically, Plaintiff complains that Officer Rife used "racial slurs" against Plaintiff and told "gang members that [Plaintiff] was a snitch with the intent of having someone to cause [Plaintiff] harm." (<u>Id.</u>) Plaintiff states that "[o]n December 9, 2019, [he] stated that [he] feared for [his] life and was placed in protective custody." (<u>Id.</u>) Plaintiff

acknowledges that "[a]n investigation was hatched on this subject." (Id.) Plaintiff alleges that being locked in the cooler has "haunted" him "mentally and emotionally." (Id.) As relief, Plaintiff requests monetary damages. (Id., p. 8.)

As Exhibits, Plaintiff attaches the following: (1) Plaintiff's "Request to Staff" dated March 11, 2019 (Document No. 2-1, p. 1.); (2) Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated March 14, 2019 (Id., pp. 2 - 3.); (3) A copy of Correctional Counselor G. Prout's "Notice of Rejection To Informal Resolution Attempt" dated March 14, 2019 (Id., p. 4.); (4) A copy of Plaintiff's "Request for Administrative Remedy" dated April 24, 2019 (Id., pp. 5 – 6.); (5) A copy of FCI McDowell Administrative Remedy Coordinator's "Rejection Notice – Administrative Remedy" dated May 6, 2019 and June 4, 2019 (Remedy ID No. 976694-F1 and F2)  (Id., pp. 7 - 8.); (6) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated June 18, 2019 (Remedy ID No. 976694-R1) (Id., p. 9.); (7) A copy of the Mid-Atlantic Regional Office Administrative Remedy Coordinator's "Rejection Notice – Administrative Remedy" dated July 15, 2019 (Remedy ID No. 976694-R1) (Id., p. 10.); (8) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated August 27, 2019 (Id., p. 11.); and (9) A copy of a "Memorandum for Administrative Remedy Coordinator" from Unit Counselor A. Lilly requesting that Plaintiff be provided an extension of time "due to a month long Institutional Lockdown and recent modified movement schedule" (Id., p. 12.).

By Proposed Findings and Recommendations ("PF&R") entered on October 8, 2020, the undersigned recommended that the District Court dismiss Plaintiff's Complaint as to the following: (1) Claims against FCI McDowell; (2) Claims of verbal abuse or harassment in violation of the Eighth Amendment; and (3) Claims of retaliation in violation of the First Amendment; and refer the matter back to the undersigned for further proceedings on Plaintiff's

3

claim of negligence and deliberate indifference concerning his allegation that he was locked in the kitchen cooler/freezer. (Document No. 8) By separate Order also entered on October 8, 2020, the undersigned granted Plaintiff's Motion to Proceed Without Prepayment of Fees and Cost concerning Plaintiff's negligence and deliberate indifference claim against Defendants Rife, Hacker, and Rickard concerning Plaintiff being locked in the kitchen cooler/freezer. (Document No. 7.) The Clerk's Office issued process the same day. (Document No. 9.)

On November 9, 2020, Plaintiff filed a letter with the Court advising that he did not wish to prosecute the above matter at this time. (Document No. 16.) The above action was terminated from the active docket based upon Plaintiff's foregoing letter. On September 30, 2021, however, Plaintiff filed a "Motion to Set Aside Magistrate's Findings and Recommendations [Pursuant to] Federal Rules of Civil Procedure 60(b)(6) & 15(c) Request for Leave to Amend Complaint." (Document No. 18.) By Memorandum Opinion and Order entered on March 18, 2022, United States District Judge David A. Faber adopted the undersigned's PF&R, dismissed Plaintiff's Complaint as to (1) all claims against FCI McDowell; (2) claims of unconstitutional verbal abuse or harassment in violation of the Eighth Amendment; and (3) claims of retaliation in violation of the First Amendment; and referred the matter back to the undersigned for further proceedings on Plaintiff's claim of negligence and deliberate indifference concerning Plaintiff's allegation that he was locked in the kitchen cooler/freezer. (Document No. 19.) By Order entered on April 22, 2022, the undersigned denied Plaintiff's Motion to Set Aside the PF&R Pursuant to Rule 60(b) and granted in part and denied in part Plaintiff's Motion to Amend. (Document No. 20.) Specifically, the undersigned denied Plaintiff's Motion to Amend as to Plaintiff's request to amend his Complaint after he has fully exhausted his administrative remedies and to the extent he wished to

rename FCI McDowell as a Defendant.[2] (Id.) The undersigned granted Plaintiff's Motion to Amend to the extent Plaintiff requested permission to amend his Complaint to state additional facts in support of his negligence and deliberate indifference claim that he was locked in the kitchen cooler/freezer and to add the correct party as a defendant for his FTCA claim. (Id.)

On June 27, 2022, Plaintiff filed his Amended Complaint. (Document No. 27.) As Defendants, Plaintiff names the following: (1) B. Rife, Food Service Supervisor at FCI McDowell; (2) W. Hacker, Head of Safety at FCI McDowell; and (3) United States of America. (Id.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference resulting in Plaintiff being locked in a freezer for more than one and a half hours. (Id., p. 4.) Specifically, Plaintiff states as follows:

> B. Rife purposely and neglectfully locked me in a freezer for more than 1 ½ hours in near freezing temperatures. The act was committed as a cruel joke and was captured on film. I was forced to ram my shoulder into the door to bust it open and injured by neck and shoulder in the process of knocking door down. The Head of Safety, W. Hacker, failed to keep the emergency latch operable. I am requesting a jury trial. Due to a month long lockdown, my transfer, modified movement procedure and COVID 19 restrictions, I was hindered from exhausting remedies. I was retaliated against by racial slurs and accused of being a snitch, which caused retaliation by gang members against me. This caused an investigation, which ultimately, I was transferred.

(Id.) By Order entered on June 28, 2022, the undersigned direct the Clerk issue process on behalf of Plaintiff. (Document No. 28.) The Clerk issued process the same day. (Document No. 29.)

On August 24, 2022, following the granting of an extension of time, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in

---

[2] Despite being specifically notified that FCI McDowell was an improper party and being denied permission to amend his Complaint to name FCI McDowell as a party, Plaintiff again included FCI McDowell as a Defendant in his Amended Complaint. (Document No. 27, p. 1.) As the Court has notified Plaintiff multiple times, FCI McDowell has been dismissed as a party to the above action. (Document Nos. 8 and 19.)

Support. (Document Nos. 37 and 40.) First, Defendants argue that Plaintiff's <u>Bivens</u> claim should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 40, pp. 6 – 10.); (2) "Plaintiff missed the statute of limitations for filing (<u>Id.</u>, pp. 5, 31 - 32.); (3) "The United States has not waived sovereign immunity for constitutional claims" (<u>Id.</u>, pp. 11 – 12.); (4) Plaintiff's allegations are not cognizable under <u>Bivens</u> (<u>Id.</u>, pp. 12 – 31.); and (5) "The Defendants are entitled to qualified immunity" (<u>Id.</u>, pp. 34 – 37.). Second, Defendants argue that Plaintiff's FTCA claim should be dismissed based on the following: (1) "There is a lack of jurisdiction for Plaintiff's FTCA claims as Plaintiff failed to pursue an Administrative Claim prior to filing this lawsuit" (<u>Id.</u>, pp. 10 – 11.); and (2) The Inmate Accident Compensation Act provides the exclusive remedy for Plaintiff's alleged injury or any negligent care provided for the injury (<u>Id.</u>, pp. 32 – 34.).

As Exhibits, Defendants attach the following: (1) The Declaration of Destiny Spearen (Document No. 37-1, pp. 2 - 4.); (2) A copy of Plaintiff's Administrative Remedy History dated July 12, 2022 (<u>Id.</u>, pp. 6 - 7.); (3) A copy of Plaintiff's Administrative Remedy Generalized Retrieval dated July 12, 2022 (<u>Id.</u>, pp. 9 – 13.); (4) A copy of FCI McDowell Institutional Remedy Index (<u>Id.</u>, pp. 15 – 23.); (5) A copy of FCI McDowell Regional Remedy Appeal Index (<u>Id.</u>, pp. 25 – 32.); (6) A copy of FCI McDowell Central Office Appeal Index (<u>Id.</u>, pp. 34 – 37.); (7) The Declaration of Jacob Van Devender (Document No. 37-2., p. 2.); and (8) A copy of the OIA Investigative Report for B. Rife, Cook Supervisor (<u>Id.</u>, pp. 4 – 8.).

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 25, 2022, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 41.) On November 2, 2022, following the granting of an extension of time, Plaintiff filed his Response

6

in Opposition. (Document No. 44.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter

jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 *4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at

the summary judgment stage. <u>Stanton v. Elliott</u>, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. <u>See Moss v. Parks Corp.</u>, 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## **<u>DISCUSSION</u>**

1.    **<u>Bivens Claim</u>:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; <u>See also Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[3] The United States Supreme Court has held

---

[3] Inmates may file claims of liability against the United States under the FTCA but may not assert

that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

A.    **Failure to exhaust.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S.

---

claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

[4] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire

12

complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The

13

Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, supra, 376 F.3d at 655(internal citations omitted);

14

also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General

Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his initial Complaint, Plaintiff indicates that he presented the facts related to his Complaint in the prisoner grievance procedure. (Document No. 2, p. 4.) Plaintiff states that "[a]ll grievances were rejected for basically the same reason – time." (Id.) Plaintiff further states as follows: "Due to the severity of this issue and the backlash I feared I would receive for filing this against the people named above, I took my time to do my 'due diligence' for the severe safety hazards and powerful people I hold accountable for this incident." (Id., p. 6.) Although Plaintiff alleges that he feared retaliation from Defendant Rife, Plaintiff acknowledges that he "filed on him and my grievance process was complete." (Id.) Plaintiff claims that once the "grievance process as complete, Rife harassed me by calling me a snitch and talking about me to other inmates." (Id.)

In his Amended Complaint, Plaintiff again indicates that he presented the facts related to his Complaint in the prisoner grievance procedure. (Document No. 27, p. 3.) Plaintiff, however, states that the "[a]dministrative process was hindered by prison lockdown, transfer, modified movement, and COVID 19 precautionary measures." (Id.)

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his Bivens claim. (Document No. 40, pp. 6 – 10.) First, Defendants state the

16

incident in question occurred on March 11, 2018 and Plaintiff did not attempt to file any administrative remedies until September 17, 2019. (Id., p. 9.) Defendants note this remedy was rejected as untimely as were three subsequent remedies. (Id.) Second, Defendants argue that Plaintiff's claim that he was hindered from exhausting his remedies "does not amount to anything more than an unsupported allegation insufficient to establish the process that was available to every other inmate at FCI McDowell was not available to him." (Id.) Defendants claim that even though Plaintiff alleges he was hindered from filing administrative remedies, "SENTRY records reflect that, from March 1, 2018, through October 1, 2018, inmates at FCI McDowell filed 121 institutional remedies (BP-9), 112 regional office appeals (BP-10), and 33 central office appeals (BP-11) for a total of 266 administrative remedies." (Id.) Defendants note that the subject of these remedies ranged "from discipline hearing appeals to medical requests to reporting allegations of staff misconduct." (Id.) Defendants further note that "[e]ach of these remedies followed the process above and were not hindered by staff at FCI McDowell but were submitted and entered into SENTRY pursuant to BOP policy." (Id.) Accordingly, Defendants argue that Plaintiff's Bivens claim should be dismissed for failure to exhaust. (Id.)

In support, Defendants submit the Declaration of Ms. Destiny Spearen, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 37-1.) Ms. Spearen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Ms. Spearen explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Spearen states as follows in her Declaration (Id., pp. 2 - 4.):

* * *

10.    In addition to being able to review a single inmate's administrative remedy

17

filing history, indexes can be run based on certain criteria to review different patterns in filing.

11.    For example, an index to show information regarding administrative remedies filed by inmates at FCI McDowell at the institutional, regional, and central office levels for a given timeframe can be pulled to see the number and general subject of these remedies.

* * *

13.    The incident in question occurred on March 11, 2018. Yet Plaintiff did not attempt to file any administrative remedies until September 17, 2019. This remedy was rejected as untimely filed, as were three subsequent remedies.

14.    SENTRY records reflect that, from March 1, 2018, through October 1, 2018, inmates at FCI McDowell filed 121 institutional remedies (BP-9), 112 regional office appeals (BP-10), and 33 central office appeals (BP-11) for a total of 266 administrative remedies.

15.    The subjects listed range from discipline hearing appeals to medical requests to reporting allegations of staff misconduct.

* * *

(Id., p. 3.)

In Response, Plaintiff argues there is a genuine issue of material fact as to whether the administrative process was available to him. (Document No. 44, p. 3.) Plaintiff contends "discovery of the administrative filing" is necessary so that he can identify "his reasoning for filing or not filing and distinguish when, where, and how the administrators at the prison curtailed his effect to file for grievances." (Id.) Plaintiff alleges that he verbally "complained" to his Unit Counselor and Lt. Sanders due to his "fear of retaliation" and "he eventually filed after he was harassed at his prison job when it was told by staff to gang members that he was a snitch." (Id.) Plaintiff further asserts "it would be fair to assume that the named counselors or lieutenants could have simply offered him a grievance other than just hoping a simply conversation would cure his injuries after their co-worker locked him in a freezer to die." (Id., p. 4.) Plaintiff argues that "[t]his

18

court may not conclude on the record before it that [Plaintiff] did not attempt to exhaust available administrative remedies [because] there is no record of him refusing to take a grievance form or anything otherwise was offered to him." (Id.) Next, Plaintiff concludes that the records attached to the Declaration of Destiny Spearen contain "evidence tending to show that he was prevented through no fault of his own from availing himself of the grievance procedure." (Id.) Plaintiff, however, offers no explanation or citation to such "evidence." (Id.) Finally, Plaintiff states that the "record clearly shows and constitutes a history of harassment and discrimination to hinder and thwart him from taking advantage of the grievance process." (Id., p. 5.)

Based upon a review of the record, the undersigned finds that Defendants have met their burden proving that Plaintiff failed to exhaust his available administrative remedies prior to filing his Complaint. Plaintiff does not dispute that he failed to properly exhaust his administrative remedies prior to filing his Complaint. Plaintiff, however, contends that the administrative remedy process was unavailable. First, the undersigned finds that Plaintiff is incorrect in his assertion that this Court may not make a finding on the exhaustion issue because there are issues of material fact. As stated above, whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel, 2017 WL 4004579, at * 3; Lee, 789 F.3d at 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse, 741 Fed.Appx. at 178 ("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") In his Response, Plaintiff concludes the administrative remedy process was rendered unavailable due to his fear of retaliation. (Document No. 44.) Such bare and conclusory assertions without producing a scintilla of evidence is insufficient to create a genuine dispute of material fact. See Silling v. Erwin, 881 F.Supp. 236, 237

(S.D.W.Va. 1995)(a party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). In his initial Complaint, Plaintiff indicates he engaged in the administrative remedy process but such remedies were denied as untimely. (Document No. 2, pp. 2 - 4.) Plaintiff explains that he "took [his] time to do [his] 'due diligence' for the severe safety hazards and powerful people [he] held accountable for this incident." (Id.) Despite his alleged "fear" of retaliation, however, Plaintiff acknowledges that he filed his remedy requests. (Id.) The undersigned finds that the foregoing does not result in a finding that administrative remedy process was rendered unavailable. It merely appears that Plaintiff may have been unaware of the time limitation for filing his administrative remedies and Plaintiff "took [his] time" to the point his grievances were untimely filed. "[A] prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies." Graham v. County of Gloucester, 668 F.Supp.2d 734, 741 (E.D.Va. 2009)(citing authority from the Third, Sixth, Seventh, Eighth, and Tenth Circuits), aff'd, 413 Fed.Appx. 660 (4th Cir. 2011); also see Gonzalez v. Crawford, 419 Fed.Appx. 522, 523 (5th Cir. 2011)(An inmate's "alleged ignorance of the exhaustion requirement, or the fact that he might have misconstrued the language in the handbook, does not excuse his failure to exhaust."); Napier v. Laurel County, 636 F.3d 218, 221-22 (6th Cir. 2011)(rejecting plaintiff's argument that "administrative remedies were not available to him" because administrators "failed to explain its grievance policy or the PLRA to him"); Twitty v. McCoskey, 226 Fed.Appx. 594, 596 (7th Cir. 2007)("A prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance."); Russell v. Butcher, 2021 WL 1618458, * 5 (S.D.Va. April 26, 2021)(J. Goodwin)(finding that an inmate's "lack of knowledge of grievance procedures

does not equate to unavailability"); <u>State v. South Carolina Dept. of Corrections</u>, 2019 WL 3773867, * 6 (D.S.C. Aug. 9, 2019)("Ignorance of the grievance process does not excuse [plaintiff's] failure to exhaust his administrative remedies."); <u>Persinger v. Northern Regional Jail</u>, 2015 WL 4645665 (N.D.W.Va. Aug. 5, 2015)("Lack of knowledge of the grievance process does not excuse compliance with the requirement that a prisoner exhaust his administrative remedies."); <u>Adams v. Southwest Virginia Regional Jail</u>, 2014 WL 3828392, * 3 (W.D.Va. Aug. 4, 2014)(finding that plaintiff's contention that his failure to exhaust should be excused based on his ignorance about the grievance process fails); <u>Goodwin v. Beasley</u>, 2011 WL 835937, * 3 (M.D.N.C. March 3, 2011)("Courts have squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack of knowledge about the grievance process."); <u>Smith v. Boyd</u>, 2008 WL 2763841, * 1 (D.S.C. July 11, 2008)("This court cannot waive the exhaustion requirement, which was specifically mandated by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process.").

Second, Plaintiff alleges in his Amended Complaint that "[a]dministrative process was hindered by prison lockdown, transfer, modified movement, and COVID 19 precautionary measures." (Document No. 27, p. 3.) It is undisputed that underlying incident occurred on March 11, 2018, and Defendants have produced evidence exhibiting that the administrative process was available from March 1, 2018, through October 1, 2018. During this period of time, SENTRY records reveal inmates at FCI McDowell filed a total of 266 administrative remedies. (Document No. 37-1, p. 3.) The ability of inmates at FCI McDowell to file grievances during this time period exhibits that the administrative remedy process was available to Plaintiff. See <u>Ferguson v. Clarke</u>,

2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed). Finally, Plaintiff argues there is no evidence "of him refusing to take a grievance form" or of him being "offered" a grievance form. The foregoing, however, is not evidence that the administrative process was unavailable. Specifically, there is no allegation or indication that Plaintiff was ever refused a requested grievance form. Based on the foregoing, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 37) be granted and Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's Bivens claim.

**2.    FTCA Claim:**

    **A.    Exhaustion of Administrative Remedies.**

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his FTCA claim, which deprives this Court of subject matter jurisdiction and requires dismissal of his remaining FTCA claims. (Document No. 37 and Document No. 40, pp. 10 - 11.) Specifically, Defendants explain that Plaintiff did not file an administrative tort claim with the agency regarding his underlying claim. (Document No. 40, pp. 10 - 11.) In support, Defendants submit the Declaration of Ms. Spearen. (Document No. 37-1.) Ms. Spearen declares

22

that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 2.) Specifically, Ms. Spearen states that a "review of the BOP's Administrative Tort Claim database reflects Plaintiff has not filed any administrative tort claims in relation to his allegations in this case." (Id.)

In Response, Plaintiff acknowledges that "a tort claim against the United States must be presented to the appropriate agency within two years of its accrual by submitting a form 95 and a sum certain claim for money damages for the injury." (Document No. 44, pp. 6 – 7.) Plaintiff, however, argues that the "date of accrual is unclear because there is no record of when [Plaintiff] received notice of the completion of the Internal Affairs investigation." (Id., p. 7.) Plaintiff argues that Defendants' filing of the "investigative findings" as an Exhibit to their Motion on August 24, 2022, is "his first time seeing the results."[5] (Id.) Finally, Plaintiff appears to argue that he exhausted his administrative tort claim by filing Administrative Remedy No. 910441-R3 filed on April 2, 2018. (Id.)

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

---

[5] Plaintiff appears to be referring the "OIA Investigative Report" (Document No. 37-2, pp. 4 – 8), which was attached as an Exhibit to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment."

The FTCA does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u> Thus, the FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. <u>See</u> 28 U.S.C. § 2675(a).[6] <u>See also</u> <u>Bellomy v. United States</u>, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. <u>Ahmed v. United States</u>, 30 F.3d 514, 516 (4th Cir. 1994) (<u>citing</u> <u>Henderson v. United States</u>, 785 F.2d 121, 123 (4th Cir. 1986); <u>Muth v. United States</u>, 1 F.3d 246 (4th Cir. 1993); <u>Gibbs v. United States</u>, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[7] <u>See</u> <u>Plyer v. United States</u>, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district

---

[6]   Title 28 U.S.C. § 2675(a) provides as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

[7]   The administrative process which inmates must exhaust when they have

court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his FTCA claim. First, Plaintiff appears to contend that he exhausted his administrative remedies by filing Administrative Remedy No. 910441-R3 on April 2, 2018. Although Plaintiff contends that he filed an administrative remedy with the prison, the exhaustion requirements concerning FTCA and Bivens actions differ. See Davis v. United States, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); Murphy v. Inmate Systems Management, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). Having examined Administrative Remedy No. 910441-R3, the Court finds that the administrative remedy related to the exhaustion of his Bivens claim, not his FTCA claim. Plaintiff fails to produce any documents indicating that he exhausted his FTCA claim. Next, Plaintiff appears to argue that his FTCA did not accrue until he was provided a copy of results of the internal investigation (August 24, 2022). Even assuming Plaintiff's claim did not accrue until

---

complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

August 24, 2022,[8] the foregoing does not save Plaintiff's FTCA claim from dismissal for failure to exhaust. To the extent Plaintiff is arguing that he has additional time remaining to exhaust because his claim just recently accrued, such does not save the instant action from dismissal based upon his failure to exhaust. Plaintiff must fully exhaust his administrative claim ***prior*** to filing his FTCA action. Prior to bringing a FTCA claim in federal court, "a claimant shall have ***first*** presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified registered mail." 28 U.S.C. § 2675(a)(emphasis added). This claim-filing requirement is jurisdiction and cannot be waived. See Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994)(citation omitted); Pyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990); Lamerique v. United States, 2019 WL 2932673, * 10 (S.D.W.Va. June 14, 2019). The record is void of any evidence that Plaintiff filed an administrative claim prior to initiating the above action. Plaintiff's efforts to now exhaust by filing an administrative claim would not save his above action from being dismissed because he did not exhaust ***prior*** to filing the above action. Accordingly, the undersigned recommends that Plaintiff's FTCA claim be dismissed for failure to exhaust. Notwithstanding the foregoing, the undersigned will briefly consider Defendants' argument based upon the Inmate Accident Compensation Act ("IACA").

### B.    Inmate Accident Compensation Act.

In their Motion, Defendants argue that Plaintiff's FTCA claim regarding the work-related injury itself, or any negligent care provided for that injury, is barred by the IACA. (Document No.

---

[8] The undersigned notes that Plaintiff's argument that his claim did not accrue until August 24, 2022, is disingenuous. A FTCA claim accrues when a claimant discovers both the injury and its cause. Plaintiff clearly filed his Complaint with this Court on August 31, 2020, asserting misconduct by Defendants and his claim for damages. (Document No. 2.)

37 and Document No. 40, pp. 32 - 34.) Defendants assert that "[t]o the extent Plaintiff seeks to recover compensation for the work-related injury itself, dismissal is appropriate as the [IACA] provides the exclusive remedy or inmate work-related injuries." (Document No. 40, p. 32.) Defendants explain that Plaintiff was assigned to Food Services for his work detail on March 11, 2018, and the alleged incident occurred while Plaintiff was at his job assignment. (Id.) Defendants note there is no dispute that Plaintiff's injury was work-related. (Id., p. 33.) Additionally, Defendants argue that "recovery is also barred for any alleged negligent treatment of work-related injuries." (Id.) Accordingly, Defendants argue that the IACA "provides the exclusive remedy for Plaintiff's injuries and medical treatment." (Id.) Plaintiff fails to address the above argument in his Response. (See Document No. 44.)

The Inmate Accident Compensation Act provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Federal prisoners, however, cannot recover under the FTCA for work-related injuries as the Prison Industries Fund, 18 U.S.C. § 4126, provides the exclusive remedy for injuries incurred in work-related incidents. See United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Recovery is barred under the FTCA for the work-related injury itself and for the negligent treatment of that injury. Vander v. U.S. Dept. of Justice, 268 F.3d 661 (9th Cir. 2001); also see Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 (3rd Cir. 2007)(finding that a claim brought in connection with subsequent negligence of prisoner doctors, rather than the initial work-related injury, is barred by Section 4126); Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir. 1987)("Section 4126 is also the exclusive remedy when a work-related injury is subsequently

aggravated by negligence and malpractice on the part of prison officials."); Thompson v. United States, 495 F.2d 192, 193 (5th Cir. 1974)("Despite the appellant's allegation that the negligence of the hospital worker occasioned further injuries, for which he seeks damages, he is barred from litigating the matter under the [FTCA] since the cause of his original injury was work-related and compensable under 18 U.S.C. § 4126."); Cook v. United States, 2012 WL 5383395 (D.S.C. Nov. 1, 2012), aff'd.,530 Fed.Appx 217 (4th Cir. 2013), cert. denied, 571 U.S. 1209, 134 S.Ct. 1292, 188 L.Ed.2d 319 (2014)("The Inmate Accident Compensation Act is also the exclusive remedy for negligent treatment of federal prisoners' work-related injuries."). A "work-related injury" is "defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "Work location" is defined by the BOP as "any place that inmate is authorized to be performing his assignment." BOP Program State 1600.09. "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam). Section 4126 not only covers injuries incurred while working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, supra, 268 F.3d at 664; Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987); Aston, 625 F.2d at 1211. Section 301.301(c), however, provides that "compensation shall not be paid for injuries suffered away from the work location (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area)." 28 C.F.R. § 301.301(c).

Courts have broadly construed the term "work-related" injury. In Baynes v. United States, 302 Fed.Appx. 334 (6th Cir. 2008), the Sixth Circuit determined that an injury occurring during a

trip to or from a job site, while on-the-clock, was a work-related injury. Baynes, 302 Fed.Appx. at 335-36; also see Payton v. United States, 2011 WL 3240487 (E.D.N.C. July 28, 2011)(although the injury occurred while plaintiff was traveling to lunch, the court concluded the injury was work-related because the injury occurred while plaintiff was still on-the-clock and being paid.) In Wooten v. United States, 437 F.2d 79 (5ᵗʰ Cir. 1971), the Fifth Circuit determined that an inmate suffered a work-related injury where the inmate was injured on the work site while traveling to lunch. Wooten, 437 F.2d at 80(finding inmate suffered a work-related injury while traveling on an elevator on his way to lunch). Courts are generally unwilling to determine that an inmate's injury is work-related absent evidence that the injury occurred during work activities, on the work site, or while the inmate was "on-the-clock." See Goforth v. United States, 2010 WL 3835541 (S.D.W.Va. Sep. 29, 2010)(denying summary judgment where there was "some evidence in the record to support [Plaintiff's] contention" that she was going to her job site at the time of her accident."); Codianni-Robles v. United States, 2005 WL 2098837, * 2 (D.Conn. Aug. 29, 2005)(the District Court denied the government's motion to dismiss finding inadequate evidence that plaintiff's injuries were work-related because "she had finished her work assignment earlier in the day" and a "different inmate was assigned to work at the time of her accident.").

Based upon a review of the record, the undersigned finds that Plaintiff's injury occurred while he was on the job and the injury was work-related. Plaintiff acknowledges that he was injured while working in Food Services at FCI McDowell on or about March 11, 2018. (Document Nos. 2 and 27.) Plaintiff states that he was injured after Defendant Rife neglectfully locked him in the cooler for approximately one and a half hours. (Id.) Defendants further concede that Plaintiff's injury occurred on the job and was work-related. Accordingly, the undersigned finds that recovery

29

for damages for the work-related injury, or any negligent care provided for work-related injury, is not available as the IACA provides the exclusive remedy for injuries incurring in work-related incidents.[9] Thus, the undersigned recommends that the District Court grant the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 37) as to his damage request for the work-related injury itself and for any negligent medical treatment for such injury.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 37) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is

---

[9] The BOP's Inmate Locator indicates that Plaintiff is currently located at FCI Petersburg and his projected release date is May 23, 2025. Title 28 C.F.R. § 301.301(a) provides that "[n]o compensation for work-related injuries resulting in physical impairment shall be paid *prior to an inmate's release*." 28 C.F.R. § 301.301(a)(emphasis added). Subsection (b) provides that "[c]ompensation may only be paid for work-related injuries or claims alleging improper medical treatment of a work-related injury." 28 C.F.R. § 301.301(b). Title 28 C.F.R. § 301.303 provides the time parameters for filing a claim. Subsection (a) provides as follows:

> No more than 45 days prior to the date of an inmate's release, but no less than 15 days prior to this date, each inmate who feels that a residual physical impairment exists as a result of an industrial, institution, or other work related injury shall submit a FPI Form 43, Inmate Claim for Compensation on Account of Work Injury. Assistance will be given the inmate to properly prepare the claim, if the inmate wishes to file. In each case a definite statement shall be made by the claimant as to the impairment caused by the alleged injury. The completed claim form shall be submitted to the Institution Safety Manager or Community Corrections Manager for processing.

28 C.F.R. § 301.303(b).

hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 12, 2023.



Omar J. Aboulhosn
United States Magistrate Judge